**UNITED STATES of America,**

v.

**Rafael TORRES–ROSARIO, Defendant.**

**Criminal No. 08–10147–NMG.**

United States District Court, D. Massachusetts.

Dec. 3, 2008.

1229 (W.D.Wash.2004).

John P. Moss, Cambridge, MA, for Rafael Torres–Rosario.

Christopher J. Pohl, United States Attorney's Office, Boston, MA, for United States of America.

### MEMORANDUM & ORDER

GORTON, District Judge.

The defendant in this case is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He has moved to suppress evidence discovered during a search of his home alleging the warrant was issued without probable cause.

### I. *Background and Procedural History*

The defendant, Rafael Torres–Rosario (Torres–Rosario), was arrested following a search of his New Bedford, Massachusetts, apartment on March 6, 2008. That search was conducted pursuant to a warrant issued by the New Bedford Division of the Bristol County District Court. The following facts are established by an affidavit accompanying that warrant:

Detective Kurt Dreher ("Dreher") is a 13-year veteran of the New Bedford Police Department assigned to the Southeastern Massachusetts Gang Task Force. In that capacity he has conducted numerous narcotics investigations and participated in training offered by the Massachusetts State Police, the United States Drug Enforcement Agency, the Federal Bureau of Investigation and the Organized Crime Intelligence Bureau. Based on his experience, Dreher is familiar with common tactics used to distribute controlled substances.

Beginning the week of February 24, 2008, Dreher, along with another police officer, conducted conversations with a confidential informant ("the CI") about three individuals selling cocaine out of the first floor apartment of 8 George Street in New Bedford. The CI is a former user and dealer of cocaine who is familiar with methods of packaging cocaine and the terminology used to refer to that drug. He has provided reliable information in the past which led to the seizure of narcotics and the arrest of Miriam Pellot ("Pellot") in 2001. Pellot is one of the individuals the CI observed selling drugs at the George Street apartment at issue here.

The CI told police that he observed drug sales being conducted in the first floor apartment at 8 George Street on several

occasions. He also identified from police photographs the defendant, Pellot and Wilfredo Guerra ("Guerra") as being the individuals who sold drugs out of that apartment. The CI observed narcotic sales by each of those individuals, including sales within 72 hours of the warrant application.

Based on the information provided by the CI, Dreher conducted surveillance at the subject location. In the course of that surveillance he observed the following:

1) Torres–Rosario and Guerra coming and going from the residence;

2) Torres–Rosario and Guerra using a light blue Honda registered to Manaset Torres, whom Dreher knows to be a local drug dealer;

3) Pellot on the front porch of the residence and both Pellot and Torres–Rosario inside the first floor apartment;

4) unknown individuals arriving at the residence on foot and in vehicles, entering the residence and departing within two to three minutes; and

5) Torres–Rosario, Pellot and Guerra letting such unknown individuals into the residence through the front door.

Based on his experience, Dreher determined that his observations were consistent with illegal drug activity.

On the basis of those facts a search warrant issued for the first floor apartment at 8 George Street in New Bedford. Torres–Rosario challenges that warrant as lacking probable cause. On September 4, 2008, he filed the pending motion to suppress which has been opposed.

## II. *Defendant's Motion to Suppress*

### A. Legal Standard

 A warrant application must demonstrate probable cause to believe that 1) a crime has been committed (the commission element) and 2) particular evidence of the offense will be found at the place to be searched (the nexus element). *United States v. Ribeiro*, 397 F.3d 43, 48 (1st Cir.2005). Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found at a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A prior judicial determination of probable cause is entitled to great deference by the reviewing court. *Id.*

 In considering the sufficiency of an affidavit, a court must determine whether the "totality of the circumstances" presented in the affidavit demonstrate probable cause. *United States v. Strother*, 318 F.3d 64, 67 (1st Cir.2003). Where the finding of probable cause depends on information supplied by an informant, courts review that determination in light of the following factors:

> whether an affidavit supports the probable veracity or basis of knowledge of persons supplying hearsay information; whether informant statements are self-authenticating; whether some or all of the informant's factual statements were corroborated wherever reasonable and practicable (e.g., through police surveillance); and whether a law enforcement affiant included a professional assessment of the probable significance of the facts related by the informant based on experience or expertise.

*United States v. Zayas–Diaz*, 95 F.3d 105, 111 (1st Cir.1996) (citation and internal quotation marks omitted). None of these factors is indispensable and "stronger evidence on one or more factors may compensate for a weaker or deficient showing on another." *Id.*

### B. Application

The warrant in this case, although based on facts supplied by an informant, was

supported by probable cause. The veracity of the CI's information was supported by his first-hand observations and his prior assistance in police investigations. Furthermore his statements were corroborated by Dreher's own observations.

### 1. Informant's Basis of Knowledge

██ The credibility of an informant is enhanced where the information supplied is based on first-hand knowledge. *United States v. Barnard*, 299 F.3d 90, 93 (1st Cir.2002). Here, the CI's statements were based on first-hand observations. He told Dreher that he personally observed drug sales being conducted inside the subject first floor apartment. From photographs he identified Torres–Rosario, Pellot and Guerra as being the individuals he observed selling drugs.

The defendant responds that the CI's statements are of questionable veracity because the CI could not even identify with particularity who sold the drugs. That is evidenced, according to the defendant, by the affiant's statement that the CI "states that narcotic sales are conducted by any one of the three individuals that reside in the 1st floor apartment." This Court construes that statement, contrary to defendant's interpretation, as meaning that the CI observed each of the three residents of the first floor apartment selling drugs. Such a reading comports with the affiant's later usage of similar language when discussing his own observations of people being let into the residence by "any one of the three."

### 2. Informant's Reliability

██ A track record of providing reliable information to police further supports an informant's veracity and a finding of probable cause based on his statements. *See United States v. Schaefer*, 87 F.3d 562, 566 (1st Cir.1996) (a proven track record is "indicium of reliability ... sufficient to bulwark an informant's report"). Here,

the CI had a proven record of providing reliable information. In 2001, he supplied information that led to the search of another New Bedford residence, the seizure of narcotics and the arrest and conviction of Pellot.

██ The defendant responds that the affidavit does not demonstrate a track record of reliability but rather one instance, seven years earlier, in which the CI's information was helpful to police. Although a sworn statement that the CI had never provided false information would have gone further to demonstrate reliability, *see United States v. Tabares*, 951 F.2d 405, 408 (1st Cir.1991), there is no requirement that an affidavit include such a statement. *See Schaefer*, 87 F.3d at 566 (track record demonstrated by affiant's assertion that an informant assisted in apprehension of another drug felon). Here, the affiant repeatedly referred to the CI as a "reliable informant" and the specific instance of prior assistance is entitled consideration when determining the informant's reliability.

### 3. Corroboration

██ In addition to demonstrating the CI's first-hand knowledge and reliability, the affidavit here included evidence of police corroboration. Corroboration of an informant's tip by police officers lends further support to a finding of probable cause. *See Zayas–Diaz*, 95 F.3d at 111. Here, Officer Dreher conducted surveillance of the suspect residence in an effort to corroborate the CI's information. During that surveillance he observed the three individuals that the CI had identified as selling drugs 1) entering and leaving the building, 2) inside the first floor apartment and 3) letting other individuals into the residence. He observed two of the individuals, Torres–Rosario and Guerra, using a

 

vehicle registered to a known drug dealer. Finally he observed numerous individuals enter and leave the building within two or three minutes. Those observations, based on Dreher's experience with narcotics investigations, were consistent with illegal drug activity.

The defendant suggests a number of further steps that police could have taken in an effort to corroborate the CI's tip. Such steps include conducting a controlled buy, stopping and questioning individuals seen leaving the 8 George Street residence, enlisting multiple informants or conducting audio surveillance. Although any of those steps may have further corroborated the CI's tip, this Court will not second guess the decisions of law enforcement about how best to conduct a confidential, and potentially dangerous, investigation.

The corroboration that police were able to obtain, along with evidence of the CI's veracity, were sufficient to establish probable cause in this case. The determination of the issuing magistrate is entitled to "great deference" and this Court does not find that determination to have been in error. *See Gates*, 462 U.S. at 236, 103 S.Ct. 2317 (citation omitted).

### C. The Good Faith Exception

Even were this Court to conclude that the warrant at issue was entered without probable cause, the defendant's motion is unsupportable because of the so-called "good faith exception." Suppression is inappropriate where, as here, officers' good faith reliance on a warrant is reasonable. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Assuming, *arguendo*, that the warrant at issue did not demonstrate probable cause, the fruits of the search would be admissible nevertheless because it was not "so lacking in indicia of probable cause

as to render official belief in its existence entirely unreasonable." *See id.* at 923, 104 S.Ct. 3405. Nor did any possible lack of particularity render the warrant "so facially deficient ... that the executing officers cannot reasonably presume it to be valid." *See id.* Consequently, the good faith exception provides one more reason why Torres–Rosario's motion to suppress should be denied.

### ORDER

In accordance with the foregoing, defendant's motion to suppress (Docket No. 11) is **DENIED.**

**So ordered.**